1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 12-CR-00140-CMA-1

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

MICHAEL DESTRY WILLIAMS,

    Defendant.
_____

9
10

REPORTER'S TRANSCRIPT
Status Conference
_____

11      Proceedings before the HONORABLE CHRISTINE M.

12  ARGUELLO, Judge, United States District Court for the District

13  of Colorado, commencing at 1:36 p.m., on the 22nd day of

14  August, 2013, in Courtroom A602, United States Courthouse,

15  Denver, Colorado.

16                      APPEARANCES

17      Kenneth Mark Harmon, U.S. Attorney's Office,

18  1225 17th Street East, Suite 700, Denver, CO 80202, appearing

19  for the plaintiff.

20      Martha Horwitz Eskesen of Martha H. Eskesen, P.C.,

21  5445 DTC Parkway, Penthouse 4, Greenwood Village, CO 80111,

22  appearing for the defendant.

23

24  Proceeding Recorded by Mechanical Stenography, Transcription
    Produced via Computer by Janet M. Coppock, 901 19th Street,
25      Room A257, Denver, Colorado, 80294, (303) 893-2835

```
 1                              PROCEEDINGS
 2              THE COURT:  Court calls Criminal Action
    No. 12-CR-00140-CMA encaptioned United States of America v.
 4    Michael Destry Williams.
 5              Counsel, would you enter your appearances, and then I
 6    will have Mr. Williams enter his appearance.
 7              THE DEFENDANT:  Please, before you get started, this
 8    woman is not counsel.  Just as I fired all of you, she has not
 9    been hired for the record.  Affidavit put into the public who
10    is your -- would you like this, sir?
11              She has never been hired.  She is not counsel.
12              THE COURT:  All right.  Counsel, would you enter your
13    appearances.
14              MR. HARMON:  Good afternoon, Your Honor.  Kenneth
15    Harmon on behalf of the United States.
16              THE COURT:  Good afternoon.
17              MS. ESKESEN:  Good afternoon, Martha Eskesen.
18              THE DEFENDANT:  Excuse me, excuse me, excuse me.  You
19    are fired.
20              THE COURT:  Mr. Williams, this is my court.  Would you
21    remove Mr. Williams from the courtroom.  You can listen in the
22    other room.  You are not going to be disrespectful to anyone in
23    my courtroom.
24              THE DEFENDANT:  $1 million assessed against your
25    personal liability from --
```

1      *THE COURT:*  The record will reflect that the defendant

2  has been removed from the courtroom because of his disruptive

3  behavior.

4          Ms. Eskensen, you may proceed.

5      *MS. ESKESEN:*  Thank you, Your Honor.  Martha Eskensen

6  appearing as standby advisory counsel to Mr. Williams.  For the

7  record, I will let the Court know that when Mr. Williams was

8  brought in today, he indicated that I was not to sit at this

9  table and I indicated that I would do what is required of me by

10  the Court.

11          I will let the Court know that he since the last court

12  appearance has apparently decided that I am not to assist him.

13  He does not want my services.  That was communicated to me by

14  the counselor at GEO Aurora Detention Center.

15      *THE COURT:*  Thank you.

16          I held this status conference because I was concerned

17  with his total refusal to accept anything from anybody in this

18  case, including any filings.  And as a result of that, I am

19  concerned of his competency, so I did order a competency

20  evaluation.

21          I am going to clarify because oftentimes we tend to

22  use the term advisory and standby synonymously and they are

23  very different terms.  Standby counsel is someone that I would

24  look to to step in to represent the defendant should the need

25  arise.  Advisory counsel is someone who is appointed to assist

1    in legal matters that the defendant, because he is

2    incarcerated, may need or to assist the Court in this

3    particular case with respect to locating a psychiatrist or

4    other doctor or psychologist that could assist in conducting

5    the competency evaluation.

6          Also, I think in a case like this where I have ordered

7    the competency evaluation because we don't know if he is

8    competent, I need to have somebody appointed who will represent

9    his interests whether he wants it or not.  So I am going to

10   clarify, and if you have any questions, Ms. Eskensen, to

11   further flesh out things, I will allow you to do that.

12         I am appointing you as advisory counsel, not as

13   standby counsel.  So your role in this case is to -- and I

14   don't know if there is a different term it's called, but to

15   represent Mr. Williams' interests in the competency evaluation

16   to the extent that you think his interests need to be

17   represented.

18         Since he has already indicated he has no interest in

19   having you do anything or be associated with him, I am going to

20   relieve your duties to have to do anything other than represent

21   his interests in the competency hearing, but I would appreciate

22   it if you could work with the Court to locate -- because I

23   don't want him shuffled here and there and have a real delay in

24   time.  I would like to go ahead and get this case moving

25   forward, so -- and I don't want to lose a bunch of time having

1    him shipped off somewhere and there is delay, so I would prefer

2    to have a local doctor or psychologist take a look at him.

3          So that's what I am charging you with here is to help

4    that happen so that we can proceed as expeditiously as possible

5    because he is being held and detained.  And I think we just

6    need to find out whether he is going to be convicted or not

7    and, if so, we can deal with that, but I just don't want to

8    have undue delay.

9          Do you have any additional questions with respect to

10   the extent of your appointment?

11         *MS. ESKESEN:*  I do not, Your Honor.

12         And knowing that these are issues that the Court was

13   going to address today, I spoke briefly with Mr. Harmon when

14   the Court first entered its order and have also done some

15   checking around as far as keeping Mr. Williams here.

16         I can tell the Court just based on what I have

17   observed thus far whether he gets shipped off somewhere or

18   whether he stays here in the local area, I seriously doubt that

19   he is going to be willing to speak to anyone.  And I think that

20   the issue that we are going to be addressing next is how do we

21   determine competency with a defendant that does not wish to

22   participate in the whole process.

23         As far as our options for having an evaluation done

24   here, I think the Court has two.  One is to request that he be

25   evaluated within the Bureau of Prisons at the Federal

1    Correctional Institution at Englewood.  There is a psychologist

2    there.  He is not a licensed psychiatrist.  He is a

3    psychologist.  And I know that there have been other defendants

4    that have been evaluated by him locally and have not had to

5    leave this jurisdiction.

6         THE COURT:  Now, have they been pretrial detainees?

7         MS. ESKESEN:  They have been pretrial detainees, yes.

8    And the other option that the Court has, obviously, is to

9    appoint independently a local area psychiatrist that would be

10   charged with going out to whatever facility he is at and

11   evaluating him there.

12        THE COURT:  I think I would prefer a local area

13   psychiatrist or psychologist mainly because if he is not going

14   to cooperate, then I think that family members need to be

15   talked to.  And for the record, I would note that I did receive

16   a note from Esther J. Williams, who is apparently the mother.

17        MS. ESKESEN:  Yes.  And she is in court today, Your

18   Honor, and she is the lady back here to your left.  I have

19   spoken at length with her.  Obviously, she is very concerned

20   about what is happening and can shed some light on some of the

21   history.

22        I know that I have been asked at least by Mr. Harmon

23   about my opinions of Mr. Williams and his competency.

24   Obviously, I am a lawyer and I am not a mental health

25   professional and certainly not a doctor in medicine, so I am

1    not qualified in that area, but my assessment of him just based

2    on the very limited contact I have had with him is that he is

3    perfectly competent.

4         This is an individual who has -- if you will, he is

5    dancing to his own tune.  He has his beliefs.  Whether or not

6    those beliefs render him competent -- incompetent I have

7    serious doubts about, but again, I am not a mental health

8    professional.

9         I think in terms of local area doctors, I have also

10   given some names to AUSA Harmon and suggested that if I need to

11   find out further information, I will.  I know I have used and

12   this Court has used in previous cases Dr. Karen Fukutaki, who

13   is with Denver Health.  And I did speak with her within the

14   past few weeks just to check out her availability because she

15   often has quite a busy schedule, and she indicated that she

16   would be available.  So I am throwing that out there for the

17   Court as well.

18        *THE COURT:*  Is there any objection?

19        *MR. HARMON:*  Judge, if I may have a chance just to

20   address a couple of the issues.  The government does have some

21   positions on this.

22        I did talk to Ms. Eskensen and I actually did vet

23   these issues internally in my office.  And this is something

24   that has been coming up more regularly, and so it's something

25   we are trying to develop a position on.

1        I think the Court just needs to know the other

2   considerations besides the ones I that think the Court noted

3   and I think are valid positions, which is if the defendant

4   cannot be spoken to, then the mental health professional does

5   need to talk to family members.  That, therefore, makes some

6   sense to have somebody local.  I got that.

7        I do just want to go back one moment, if I could, to

8   the issue of Ms. Eskensen's role as advisory versus standby.  I

9   perfectly understand advisory and the limited aspect in which

10  she would be advisory at this point.  I do want to raise this

11  with the Court, however.

12       I think the Court should consider whether she should

13  be appointed as standby counsel as well, and here is why:

14  Because if we get into the trial process and if the defendant

15  behaves in a way similar to the way he behaves now, this Court

16  may come to the view that he has disenfranchised himself of the

17  right of self-representation and that right has limits.  I

18  mean, if you can't abide by court protocol, for example, you

19  don't have that right to be -- to represent yourself.

20       So if we are in the middle of a trial setting, which

21  appears very likely at this point, and the defendant does

22  behave in that way, and the Court finds that he has lost that

23  right to be pro se, if somebody is not there to take on the

24  representation and continue with the trial, the Court's only

25  other option is really to declare a mistrial and to relieve

1   jurors who will be impaneled if we get that far.

2          THE COURT:  Or to just proceed with the trial.  He

3   makes the decision.  I had this happen in another case.

4   Defendant refused to have -- I had standby counsel.  It's a

5   tremendous expense and we just don't have the money to do that

6   anymore.  And I had standby counsel who sat at that back table

7   because, like Mr. Williams, defendant refused to have him sit

8   at the table.  And that's his right.  He has a right not to

9   have a lawyer there.  I had to exclude him from the trial.  And

10  he refused to have standby counsel come in, so I never

11  appointed him.

12         MR. HARMON:  I just want to remind the Court, and the

13  Court knows this already, the Court can find at some point that

14  he has lost that right to counsel and the Court could find,

15  although it doesn't have to -- it's all fact dependent and

16  circumstance dependent -- that for there to be a fair trial,

17  notwithstanding his wishes it should appoint someone to

18  represent him.  There is case law to support that.

19         If the Court gets to that position and you don't have

20  somebody who has read the discovery and ready to take over the

21  case as standby counsel, then you are really in a mistrial

22  status.

23         THE COURT:  That was one of the issues -- I am not

24  really familiar with the intricacies of this, but that was one

25  of the ways in which the 10th Circuit distinguished is that he

1   voluntarily excused himself from the trial.  He didn't want to

2   be here as opposed to me involuntarily excusing him from the

3   trial.  So I will give that some thought.

4          At this point, though, Ms. Eskensen is merely going to

5   be advisory counsel.  I will have to do more research on that,

6   and if you have any case law that you want me to take a look at

7   with respect to that -- the concern I have is it's clear that

8   Mr. Williams does not want anybody representing him.  And it's

9   likely he is not going to be able to behave himself based on

10  what we have seen in the last few hearings, and I may have to

11  exclude him.

12         And then the question becomes how likely is it that

13  the Court is going to force someone to step in because it is a

14  very costly -- especially when they are refusing to cooperate

15  with counsel.  It puts counsel in a terrible predicament

16  because they don't have a client that will cooperate with them.

17         So I am kind of torn in terms of whether really it's

18  just a waste of money to do so, but I appreciate it.  I think

19  at this point, though, it's going to be advisory for the time

20  being.  It may turn into standby counsel as we proceed.

21         *MR. HARMON:*  Just to complete the record on this

22  issue, I will tell the Court that we have continued to send

23  discovery and pleadings to the defendant and they have

24  continued to come back to us.  The envelope is opened, but the

25  contents are delivered to us, so I cannot tell -- I can tell

1   the Court at this point that he has not taken any of our

2   discovery, that we have it back, so he has refused that

3   discovery.  I want to make sure that's clear for the record.

4        As to the issue of where the defendant will be

5   evaluated, I would also add in what he will be evaluated for.

6   I just wanted to add these things.  We have been focusing on

7   the mental competency issue and I understand that.  That's

8   something the Court raised *sua sponte*.  It's something I was

9   thinking about and not there yet in terms of making the motion,

10  but the Court saw the circumstances and decided to go ahead,

11  and I understand that.

12        There is a physical issue, and I want to make sure

13  that that doesn't get lost in the discussion about who the

14  right person is to evaluate him.

15        *THE COURT:*  That's the Mercury poison?

16        *MR. HARMON:*  That's the physical examination and he

17  may have some separate problems that just make it difficult for

18  him to be functioning on all four cylinders if he chooses to

19  engage the court.  So there needs to be an argument -- and we

20  made the motion and the Court granted the motion -- there needs

21  to be a doctor who can actually do some type of medical

22  evaluation on him.

23        *THE COURT:*  I think that should be done within the

24  system.

25        *MR. HARMON:*  And that's what I wanted to get to

1    because if we are talking about where he is going to be

2    examined, that's a factor to consider.  Mr. Gutierrez,

3    Guillermo Gutierrez, who is the case manager at GEO, told me,

4    and I think I put this in the supplement to our motion, the

5    defendant is not being cooperative in the GEO detention setting

6    with any type of medical examination.  And so I think that's a

7    factor for the Court to consider when it considers where the

8    physical examination that the Court orders should be conducted.

9         I think it needs to be conducted in a Bureau of

10   Prisons setting or -- well, at Englewood, basically.  That may

11   be the best place because it's local, but it's still within the

12   Bureau of Prisons context.  And there are doctors over there.

13   We don't have to hire outside doctors.  They are on staff.  I

14   will tell you as far as -- so that's where I am at on the

15   medical part of this.

16        I think he needs to be moved over to Bureau of Prisons

17   custody for that threshold medical examination.  I think that

18   needs to be done before we even get to -- well, it needs to be

19   done either before or parallel to the psychiatric or

20   psychological examination because if -- and I am not a medical

21   professional -- but if he does have Mercury poisoning and if it

22   does affect cognitive abilities, it's something that a

23   psychiatrist or psychologist is probably going to want to know

24   about before that person, that expert is required to submit a

25   report to you.

1    THE COURT:  I don't know how much success we are going

2    to have on either, so I think I just want them to proceed

3    concurrently as expeditiously as possible.

4         I am going to order that the physical examination,

5    physical/medical examination be conducted -- where is he being

6    held now?

7         MR. HARMON:  At a contract facility, GEO detention

8    facility in Aurora.

9         THE COURT:  Is it possible to have him moved to a BOP

10   facility?

11        DEPUTY MARSHAL:  I would have to talk with my

12   supervisor, Your Honor, but I am guessing it's possible.  Do

13   you need an answer right this second?

14        THE COURT:  No.  I am going essentially order that his

15   physical medical examination is to be conducted by someone

16   either in the Bureau of Prisons, if he can be moved there, and

17   that would be my directive, not an order, but just kind of a

18   suggestion that we see if we can get him moved over to the

19   Bureau of Prisons and that they conduct the physical

20   examination.

21        I am going to order that Dr. Karen Fukutaki be

22   appointed to conduct a medical competency evaluation for

23   purposes of determining whether he is competent to be tried or

24   competent to assist in his defense and all that the statute

25   requires, and those to proceed concurrently.

1          I also wanted to make sure that if the defendant

2   refuses to cooperate in the mental competency evaluation, that

3   Dr. Fukutaki then know that she should approach family members,

4   such as Mrs. Williams, to gain as much information as she can

5   and if there are others.  I am not sure what happens if he

6   refuses to take part in a physical medical examination.  I am

7   ordering it to be done.

8          *MR. HARMON:*  Judge, I do want to just state the

9   government's position.  I know the direction the Court is

10  going.  I respect that.  That's why he should be in a Bureau of

11  Prisons setting for the physical exam.  He is detained.  If he

12  has got a medical condition that physically can affect him and

13  can cause deterioration, they have an interest in making sure

14  they know about it.  So they have their means to get it done,

15  so I don't know if he has much of a choice in the physical

16  examination.

17         I am sure he could bring a tort suit at some point

18  down the line and argue about that.  I think at this point if

19  he is in their custody and he is claiming he is poisoned, the

20  Bureau of Prisons has the right to examine him to make sure

21  that they are not holding somebody there who maybe in a slow

22  way as opposed to a fast way is on the road to serious medical

23  problems.

24         The argument I was going to make was that if you are

25  going to have him in a Bureau of Prisons facility anyway, then

1    you may want to view this thing holistically; that is, the

2    physical aspect of this examination is an important factor in

3    the mental competency aspect, so you may want to have the staff

4    talking to one another, and that counsel is in favor of

5    actually having the defendant in a Bureau of Prisons setting

6    that's a medical facility.  That's the argument to make.

7         Now, the argument against it I got, I mean, it's

8    better to have him locally all things considered, there may be

9    some thought on the Court's mind that that's going to save the

10   government money if we do it locally.  I will tell you --

11        THE COURT:  No, I just think there is going to be no

12   cooperation, so they are going to have to end up talking to

13   family members.  That's really my concern here.

14        MR. HARMON:  I was going to tell you from the

15   Department of Justice's perspective, we don't necessarily save

16   money by doing that.  I want to make sure the Court was aware

17   of that.

18        THE COURT:  And money should be the last

19   consideration, actually.  We are talking about the defendant's

20   rights here.  My concern is based on all the experience, the

21   limited experience I have had with him, but reading the

22   transcripts of how far he has conducted himself before other

23   judges in this court and then the display that was here today,

24   he is not going to cooperate with anything.  And I think

25   therefore we are going to have to look to the family and others

1    who know him.

2          MR. HARMON:   And not to try the Court's patience, but

3    the last issue, this now goes to what type of opinion you are

4    asking the psychiatrist to render.   It's obvious and it's

5    straightforward that the psychiatrist will take a look at the

6    *Dusky* mental competency standard and give an opinion.   And

7    that's set forth in the statute.   If you read the language, the

8    actual language of that standard, that's designed for a

9    represented defendant because it talks about assisting in his

10   defense.   The case law talks about consulting with counsel.

11         When you get into the area of a defendant who is

12   representing himself, there may be other issues of competency

13   that need to be addressed.   This was first I think expressly

14   kind of teed up as an issue in *Indiana v. Edwards*, which is

15   reported at 554 U.S. 164, a 2008 case, where the Court

16   acknowledged there is two areas of competency and two types of

17   determinations and they don't necessarily dovetail.

18         I will tell the Court there is a 10th Circuit case

19   that came shortly after that, a year after that, that said in

20   essence, well, we can use the same standards for both, but I

21   think there is some questions about that.   I will give the

22   Court that case as well.

23         THE COURT:   Actually, what I am going to request is

24   that you prepare the proposed order to cover all of the areas

25   that you think so that we make it really clear to Dr. Fukutaki

1    what it is she needs to evaluate.

2         MR. HARMON:  I will cut to the chase and I will tell

3    the Court what I am planning on doing.  I had this come up with

4    a non-detained defendant who was representing himself where

5    court-appointed counsel asked for a competency evaluation.  We

6    did an order and visiting Judge Vratil entered it.

7         It talked about evaluating him not just for the *Dusky*

8    standard, but whether he had the competency to waive his right

9    to counsel and the competency to conduct and engage in basic

10   skills, trial skills, that are kind of outlined in that Indiana

11   case.  That order I believe was entered in Case No. 08-CR-263.

12   And frankly, that's the one I would prepare for the Court.

13        THE COURT:  That would be great.  I would appreciate

14   that.  You have had experience on this.  I have not yet.

15        MR. HARMON:  I don't know if it's good experience.

16   That's all I have to say.

17        Thank you, Your Honor.

18        THE COURT:  At that point we will make the decision as

19   to whether or not he is competent to waive his right to counsel

20   and whether I should have standby counsel.  We will deal with

21   those issues as we get them, but I think we need to get these

22   two evaluations done first.

23        MS. ESKESEN:  And, Your Honor, I think actually you

24   have had experience with this tangentially in the case with

25   Mr. Stanley.  And what happened in that case was Mr. Stanley

1    was sent off for a competency evaluation after he had been

2    granted the right to represent himself, but at the same time --

3    and this was then before Chief Judge Babcock -- he appointed

4    counsel while the competency evaluation was occurring because I

5    know that in other cases other judicial officers have said,

6    well, we can't reach the question of a waiver, a knowing waiver

7    of the right to counsel without first evaluating whether the

8    defendant is competent to make that waiver.

9           THE COURT:  Right.

10          MS. ESKESEN:  In this case the Court has already done

11   that, obviously.  There are two options here.  The Court can

12   undo that or the Court can leave it as it is.

13          I will just simply for the record make it known that I

14   do not have any problems with Mr. Williams.  I know that he

15   does not wish to speak with me anymore and has expressed to the

16   Court that I am not his lawyer and he doesn't want me as his

17   lawyer.  I am not saying I am unwilling to do any of that.  I

18   am willing to be his lawyer and I will simply do as directed.

19          I know that also is one of his concerns because

20   obviously being an individual that does not recognize this

21   Court's authority, Your Honor's authority, this jurisdiction,

22   that's the starting point for him with all of this.

23          MR. HARMON:  Just as a clerical matter to follow up on

24   the proposed order, my proposal is to basically e-mail it

25   directly to the Court with a copy to Ms. --

1       THE COURT:  Yes, to chambers with a copy and I will

2    review it and change it as I deem necessary, so just

3    arguello_chambers.  I don't know what this affidavit is.  It

4    was tendered to the Court, so I would say we probably ought to

5    just go ahead and have it docketed as a filing.

6           All right.  Is there anything further?

7       MR. HARMON:  No, thank you, Your Honor.

8       MS. ESKESEN:  No, thank you, Your Honor.

9       THE COURT:  The defendant is remanded.  The Court is

10   in recess.

11      (Recess at 2:02 p.m.)

12                   REPORTER'S CERTIFICATE

13      I certify that the foregoing is a correct transcript from

14   the record of proceedings in the above-entitled matter.  Dated

15   at Denver, Colorado, this 4th day of September, 2013.

16

17                          S/Janet M. Coppock____

18

19

20

21

22

23

24

25