1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Case No. 12-cr-00140-CMA

───────────────────────────────────────────────

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

MICHAEL DESTRY WILLIAMS,

    Defendant.

───────────────────────────────────────────────

Proceedings before MICHAEL E. HEGARTY, United States Magistrate Judge, United States District Court for the District of Colorado, commencing at 2:16 p.m., July 2, 2013, in the United States Courthouse, Denver, Colorado.

───────────────────────────────────────────────

WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED...

───────────────────────────────────────────────

APPEARANCES

KENNETH HARMON, Assistant United States Attorney, appearing for the government.

ROBERT PEPIN, Assistant Federal Public Defender, appearing for the defendant.

───────────────────────────────────────────────

ARRAIGNMENT/DISCOVERY/DETENTION HEARING

1             P R O C E E D I N G S
2             (Whereupon, the within electronically recorded
3    proceedings are herein transcribed, pursuant to order of
4    counsel.)
5             THE COURT: Case No. 12-cr-140, United States of
6    America versus Michael Destry Williams.  Can I have
7    appearances, please.
8             MR. HARMON: Good afternoon, Your Honor.  Kenneth
9    Harmon on behalf of the United States.  Seated at
10   government's counsel table with me is Special Agent Trista
11   Mertz, IRS Criminal Investigation.
12            THE COURT: Thank you.
13            MR. PEPIN: Your Honor, I'm Robert Pepin.  I've
14   been appointed by the court but I'm moving to withdraw my
15   (inaudible - not at microphone) ask that I not represent
16   him.
17            THE COURT: Okay.  Are you free to -- okay.
18            All right, let me discuss that with you for a
19   second, Mr. Williams.  I've been here for seven-and-a-half
20   years, I know of no better criminal defense lawyer than
21   Robert Pepin.  You will not get a better lawyer.  We will
22   appoint somebody for you, even if you don't want a lawyer,
23   to monitor the case.  You are entitled to represent yourself
24   if you're competent, but the Court usually appoints an
25   attorney just to monitor things and step in as needed.

3

1           Do you really want Mr. Pepin to withdraw from the
2 case?

3           THE DEFENDANT: (No response from the defendant).

4           THE COURT: Well, I guess this is quite a change
5 from the last hearing, so maybe this is even better.

6           THE DEFENDANT: If someone will address me in my
7 proper name, either as Beneficiary of the entity that you
8 just called, or as Michael Destry, I will respond. But with
9 that said, in the last court and in this court I invoke
10 Article III common law and request that this be transferred
11 to a judge of the District of Colorado. As you are a
12 magistrate of the petty offenses courts of the United
13 States, I do not give you permission to move forward unless
14 it's to take me to a judge under Article III. If you
15 continue, I have a fee schedule for all public servants in
16 the public, and I will arrest your bonds.

17           THE COURT: You know, there's a chance that you'll
18 get out on bond today if you behave. There's no chance --

19           THE DEFENDANT: You hear me, and I am not going to
20 say another word.

21           THE COURT: -- there's no chance that if you
22 misbehave you won't. And if you do interrupt me and
23 continue to speak, I have the authority to have your mouth
24 bound by duct tape, and I will exercise that authority.

25           So I'll ask you again, Mr. Destry, Michael Destry,

```
 1     do you --
 2               THE DEFENDANT: Beneficiary.
 3               THE COURT: Beneficiary.  Do you really want one of
 4     the best lawyers I know to withdraw from your case?
 5               THE DEFENDANT: I've already fired him, it has
 6     nothing to do with you.
 7               THE COURT: I didn't say it had anything to do with
 8     me, I said do you want him off the case?
 9               THE DEFENDANT: How many times do I have to say
10     that he is fired?
11               THE COURT: Okay.  Well, you only get one firing,
12     so this -- you're using up your chip right now.
13               THE DEFENDANT: Excuse me --
14               THE COURT: So, Mr. Pepin, I will grant your
15     motion.  However, Mr. Destry, Beneficiary, you have to have
16     a lawyer in order to proceed, so we're not going to be able
17     to proceed today.  We'll set this matter over for another
18     day and you'll spend some more time in that green jumpsuit,
19     so is that really what you want to do?
20               THE DEFENDANT: Since you've threatened me, this is
21     your second notice.  If you do this again, I will seize your
22     bond.  You have been noticed, Public Servant.
23               THE COURT: Okay.  So, Mr. Harmon, how much time
24     do you think we need to actually have another attorney
25     appointed and see if Mr. Destry, Beneficiary, can get along
```

5

1    with the next lawyer?

2         MR. HARMON: Well, Your Honor, I don't think we're
3    going to be able to do this tomorrow.  That's -- that's
4    carrying it over to Friday.

5         THE COURT: Right.

6         MR. HARMON: The IRS is actually closed on Friday.

7         THE COURT: Okay.

8         MR. HARMON: Although, the agent who would be my
9    witness can come in.  I don't know if we actually need to do
10   evidentiary proceedings in respect to a detention hearing on
11   Friday.  I think the threshold issue is this, which is what
12   Judge Tafoya was trying to get at during the initial
13   appearance and advisement, she made a finding at the time,
14   which was the triggering timing for the appointment of Mr.
15   Pepin, that Mr. Williams, Michael Destry Williams, was not
16   competent to represent himself.  It was based on the nature
17   of the proceeding at the time.  Mr. Williams was not
18   behaving in court and not letting Judge Tafoya get a word in
19   edgewise, so I think the initial proceeding has to be
20   whether the defendant is competent to represent himself or
21   whether he should have a lawyer regardless of his --

22        THE COURT: Well, was he competent -- do you
23   believe there's an issue as to whether he's competent to
24   assist in his defense?  If so, then there's procedures we
25   need to engage in.

6

1    MR. HARMON: I don't know.  I think what needs to
2    be done is an attorney needs to be appointed and just talk
3    to him, and he can make that call.
4         THE COURT: Well, we did that once.
5         MR. HARMON: Well --
6         THE COURT: Mr. Pepin --
7         MR. HARMON: There's two -- I would say this,
8    there's two competencies, Your Honor.  There's the
9    competency to assist in the representation --
10        THE COURT: Right.
11        MR. HARMON: -- which is one, and then there's the
12   other competency, which is to be a pro se litigant.  They're
13   related but they're separate.
14        THE COURT: Okay.
15        MR. HARMON: The one I'm talking about right now
16   that I thought Judge Tafoya was seizing upon in appointing
17   Mr. Pepin was the competency to comport oneself in court and
18   be one's own advocate and, therefore, represent oneself pro
19   se.
20        THE COURT: And where are the standards for that
21   level of potency identified?  Are they in the file?
22        MR. HARMON: There -- there's Supreme Court cases
23   on that.  I can -- I can -- I had that come up in one of my
24   cases.
25        THE COURT: So it's just case law, it's not

```
 1     codified anywhere.
 2               MR. HARMON: No.
 3               THE COURT: Okay.  Do you have the case law with
 4     you?
 5               MR. HARMON: Not -- not with me.
 6               THE COURT: Do you know enough about it to make a
 7     representation?
 8               MR. HARMON: I know that we litigated this in
 9     United States versus Wilson, which is a case that was
10     assigned to Judge Vratil, 08-cr-263 is the case.
11               THE COURT: Okay.  And just generally, what is the
12     standard?
13               MR. HARMON: I'd be misleading the Court if I tried
14     to recall it off the top of my head.
15               THE COURT: All right.
16               MR. HARMON: But it does -- it does -- one of the
17     components was whether the defendant can comport himself in
18     court and abide by the rules.
19               THE COURT: Well, he's abiding by the rules right
20     now, so --
21               MR. HARMON: I'm at your pleasure, Judge.  If you
22     want to try to appoint another attorney and have a go at it
23     at Friday, we'll be happy to --
24               THE COURT: Well, I think we have to give it one
25     try at least, because, in my experience, you do get one
```

1    chance to ask a competent lawyer to get off your case and we
2    don't really question that too much, but if there's two,
3    then that's a problem.
4           MR. HARMON: I just -- not to wear the Court's
5    patience thin, I -- the sense I got from Mr. Michael Destry
6    Williams when there was actually a dialogue in court last
7    week was that he doesn't want another lawyer, he wants no
8    lawyer, and he wants the right to represent himself.  We did
9    not have the ability to conduct a Faretta inquiry, which is
10   what would be required.  And so that's the threshold issue,
11   is whether Mr. Destry Williams is asking for another lawyer
12   or he wants to represent himself.  If he wants to represent
13   himself, you go one way.  If he doesn't want to represent
14   himself, then we see how things fare with the second lawyer.
15          THE COURT: Okay.  Mr. Destry, Beneficiary, are you
16   willing to tell me whether you want to represent yourself or
17   whether you'd like an attorney?
18          THE DEFENDANT: I've already represented myself,
19   and may I make a notice to the Court?
20          THE COURT: Sure.
21          THE DEFENDANT: I already have a judgment against
22   the IRS in this matter, it was handled ten years ago by
23   federal attorneys out of Washington and it's publically
24   noticed.
25          THE COURT: You may have defenses to the case, it's

1    just that we can't really find out what your defenses are if
2    you don't cooperate.
3           THE DEFENDANT: And --
4           THE COURT: You may be able to get out of the case,
5    the United States may drop all charges, it's happened
6    before, but we're not going to be able to get to the merits
7    if you don't cooperate, and you may spend months and months
8    in jail just because you proceeded like you want to instead
9    of what a very learned and educated and experienced attorney
10   told you to.
11          So it's my advice to you that you listen to your
12   attorney, have him carry the water in the case, present your
13   defense and see what happens.  When you try to do it
14   yourself, it just usually goes bad, that's your call.  So I
15   know you've already represented yourself, but my question to
16   you is:  In this criminal proceeding, in this Indictment
17   that's been issued by a grand jury in this district, do you
18   want to be your own attorney, or do you want me to appoint
19   an attorney for you?
20          THE DEFENDANT: My only request here is for an
21   Article III court judge to be arraigned properly.  Until
22   that happens, you do not have my permission, and if you
23   continue, sir, I'll have no options but to seize your bond.
24          THE COURT: I don't know what -- I don't have a
25   bond.  I wish I had a bond.  I mean, I'd better off with a

1      bond.  I don't have a bond.

2             And you will see -- the next person you'll see is

3      an Article III judge named Christine Arguello.  The

4      procedures we have set up, laws passed by Congress,

5      authorize magistrate judges to conduct very initial

6      proceedings in a case like this.  We -- we don't have much

7      authority, so in anything we do you can appeal to your

8      Article III judge.  I can be reversed like that.  So that

9      doesn't bother me --

10            THE DEFENDANT: Can I make this --

11            THE COURT: -- it is what it is.  But I need to

12     know whether you want to have an attorney or represent

13     yourself.

14            THE DEFENDANT: Like I said, the only thing I'm

15     requesting here is invoking Article III common law.  You do

16     not understand, Public Servant, you're violating your oath

17     of office, I am going to arrest your bond.

18            THE COURT: But I need to know whether you want an

19     attorney or you don't.

20            THE DEFENDANT: I've already made that assumption.

21            THE COURT: Well, and disclose it to me again.

22            THE DEFENDANT: All public officials are fired.

23            THE COURT: Well, but we have private attorneys who

24     can come in and represent you, they're not public officials

25     at all.  They're out there making all kinds of money, and

```
 1    they're very good, too.  Would you like one of those kind of
 2    guys who's not employed by the United States government in
 3    any way whatsoever?
 4              THE DEFENDANT: I will answer that at a proper
 5    arraignment in front of an Article III court judge.
 6              THE COURT: Okay.  I think he might be satisfied
 7    with appointment of a for-profit attorney, so we'll -- I'll
 8    appoint a member of --
 9              THE DEFENDANT: Do not speak for me, sir.
10              THE COURT: -- I'll appoint a member of the CJA
11    panel to represent him, and we'll have a hearing on Monday,
12    since --
13              MR. HARMON: Judge, do you want to have a detention
14    hearing --
15              THE COURT: Well, actually --
16              MR. HARMON: -- or do you want to have a status
17    hearing to figure out if the case is going to go forward
18    with that --
19              THE COURT: Well, we'll set it for a status
20    hearing.
21              Can we do -- if a CJA attorney is appointed, can
22    we do it on Friday since that doesn't involve the PD's
23    Office?
24              MR. HARMON: I have -- I can be here.
25              THE COURT: Are we allowed to do it if it doesn't
```

1     involve the public defender?

2              UNIDENTIFIED SPEAKER: I'm not sure about the
3     Marshal Service, Your Honor.

4              THE COURT: Okay.  Anybody know from the Marshal
5     Service?

6              UNIDENTIFIED SPEAKER: We can do it, Your Honor,
7     (inaudible - not at microphone).

8              THE COURT: Well, I don't want to get in trouble
9     with the bosses of the building, so I'm not sure whether
10    there's a blanket prohibition.  There's not a blanket
11    prohibition because we can do initial appearances on
12    Fridays, I think.  Can't we do initial appearances?

13             UNIDENTIFIED SPEAKER: (Inaudible - not at
14    microphone).

15             THE COURT: So it seems to me we should be able to
16    do a hearing involving a CJA lawyer.

17             Mr. Pepin, do you think we can do that, based on
18    your understanding of what we're doing here in the court
19    nowadays?

20             MR. PEPIN: All I know is that I can't.

21             THE COURT: Right.

22             MR. PEPIN: (Inaudible - not at microphone).

23             THE COURT: Right.  Well, you're off the case
24    anyway.

25             MR. PEPIN: No, I mean I just (inaudible - not at

1      microphone).

2              THE COURT: Okay.  Okay.  Well, let's set it for
3      Friday.  Are you available Friday?

4              MR. HARMON: I'll be here Friday.  Your Honor, I
5      guess I'm prepared to have a witness here Friday as well.
6      There is an issue about how long the detention can be
7      continued.  We continue the three days based on the
8      government's automatic right to a three-day continuance.

9              THE COURT: Well, I think it can go five, total.

10             MR. HARMON: That's right.

11             THE COURT: And --

12             MR. HARMON: Without good cause, without finding
13     good cause.

14             THE COURT: And that would be the fifth business
15     day, right?

16             MR. HARMON: That's right.

17             THE COURT: So what do you think we need to do then
18     on Friday?

19             MR. HARMON: I think we need to start off with the
20     issue of counsel and work our way from there.

21             THE COURT: Okay.  And so what if -- so if Mr.
22     Destry, Beneficiary, somehow sees the light and agrees to
23     the attorney I appoint him, we can go forward simply with an
24     arraignment, discovery and detention, and it goes forward
25     like a normal case.  And we can even consider, Mr. Destry,

```
 1      Beneficiary, letting you out on bond.  However, if you
 2      persist in completely disrespecting the institutions that
 3      this country has set up for the administration of justice,
 4      you will establish beyond doubt that you're incapable of
 5      following any court order, and therefore, I guarantee you,
 6      you'll be detained pending your trial, which in a case like
 7      this, Mr. Harmon, can be how long?
 8              MR. HARMON: Well, it could be declared complex and
 9      it can go two years before we --
10              THE COURT: Two years?
11              MR. HARMON: Yeah.
12              THE COURT: Before you ever have a finding of guilt
13      or innocence.  You can be held in detention for two years
14      because you proved yourself to be a danger to the community,
15      so that's going to be your call.
16              All right.  So what if he really doesn't answer,
17      then, any questions regarding whether he wants an attorney
18      or not, what would we proceed to?
19              MR. HARMON: I think the Court would then need to
20      address whether he's competent to represent himself, and/or
21      whether the defendant's Sixth Amendment right to persist in
22      representing himself can be -- can give way to the other
23      considerations that he would have.  I can research it and
24      I'll be prepared to discuss that on Friday, but I know that
25      the right to self-representation is not absolute and there
```

15

1    are circumstances where that has to yield.
2              I will just say on the two years' thing, Your
3    Honor, two years if there are continuances and exclusions of
4    time from the Speedy Trial Act, but typically that's what is
5    asked for by the parties, and up to two years can be the
6    normal amount of time.  I don't want to mislead the Court.
7              THE COURT: Understood.
8              MR. HARMON: The defendant has a right to 90 days
9    under the Speedy Trial Act without exclusions.
10             THE COURT: Okay.  Well, I'll be prepared to engage
11   in the colloquy necessary to establish whether he's
12   competent to represent himself, okay?
13             MR. HARMON: Okay.
14             THE COURT: And I've also sent people off for
15   mental evaluations on several occasions, so I know how to do
16   that, which is about a four-month process, sitting in either
17   Springfield, Missouri, or Rochester, Minnesota, or Butner,
18   North Carolina.  So --
19             MR. HARMON: I will tell the Court that under Case
20   No. 08-cr-263, the court-appointed lawyer, Mr. Peters, made
21   a motion to ask that his client be evaluated for competency
22   because of the types of pro se filings he was making without
23   authorization --
24             THE COURT: Well, that's where --
25             MR. HARMON: -- and then we did get into a

1    discussion about all of the issues that I think would be
2    pertinent here.  I'll go back and look at that case, but
3    there were filings in that case that addressed this issue.
4            THE COURT: Okay.  Well, that's where the request
5    usually comes from.
6            All right, then that will be the order of the
7    Court.  What time on Friday?
8            THE CLERK: 10 o'clock.
9            THE COURT: 10 o'clock.  Okay.  So the CJA panel
10   will be represented, hopefully we'll be able to proceed.
11           MR. HARMON: May I make a suggestion that unless
12   there's an inconvenience, it be done in the afternoon.  That
13   way the CJA counsel will have the most amount of time to
14   become familiar with the case.
15           THE COURT: Okay.
16           THE CLERK: We can do it at 1:30.
17           THE COURT: 1:30.
18           MR. HARMON: Thank you.
19           THE COURT: Okay.  And be prepared with whatever
20   evidence you need on detention, too.
21           MR. HARMON: We're ready to go.
22           THE COURT: But I -- I mean, I honestly -- I will
23   consider a bond for this man if he has respect for the
24   Court, okay?
25           MR. HARMON: We'll have something to say about

```
 1    that, Your Honor.  There are multiple failures to appear and
 2    arrest warrants out for the defendant.
 3              THE COURT:  I understand, but I'll give him a
 4    chance to prove that he should be released on bond.
 5              All right.  Then --
 6              THE DEFENDANT:  I need to make a statement, sir.
 7              THE COURT:  Pardon?
 8              THE DEFENDANT:  I need to make a statement.
 9              THE COURT:  Well, you don't -- you have the right
10    to remain silent.
11              THE DEFENDANT:  I just need to make a statement
12    right now.
13              THE COURT:  I know, but let me advise you of your
14    right to remain silent, first, because even when you make
15    statements, if you don't think you're doing anything
16    incriminating, you might be.  So you have a right to remain
17    silent, but I'm not going to prohibit you from speaking.  Do
18    you want to still make a statement?
19              THE DEFENDANT:  I would like to make a notice, yes.
20              THE COURT:  Go ahead.
21              THE DEFENDANT:  Since you've continued past your
22    warning, Public Servant Magistrate, I do accept your
23    dishonor of your oath, and I hereby assess, per my fee
24    schedule in the public, one million silver species.  Your
25    bond has now been arrested, would you like to settle your
```

18

1    debt?
2         THE COURT: You're making things easier on me by
3    your statement, so --
4         THE DEFENDANT: I'll take that as a no.
5         THE COURT: -- this case is in recess.
6         THE CLERK: All rise.  Court is in recess.
7
8         (Whereupon, the within hearing was then in
9    conclusion at 2:33 p.m. on July 2, 2013.)
10
11         I certify that the foregoing is a correct
12    transcript, to the best of my knowledge and belief, from the
13    record of proceedings in the above-entitled matter.
14
15         /s/ Bonnie Nikolas                September 9, 2013
16         Signature of Transcriber                    Date
17
18
19
20
21
22
23
24
25