**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Action No. 12cr00140

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**MICHAEL DESTRY WILLIAMS,**

**Defendant.**

_____

**REPORTER'S PARTIAL TRANSCRIPT**
**(Jury Trial Day 5 - Testimony of K. Hansen)**
_____

        Proceedings before the HONORABLE CHRISTINE M.
ARGUELLO, Judge, United States District Court, for the
District of Colorado, commencing at 10:33 a.m. on the 4th
day of November, 2013, Alfred A. Arraj United States
Courthouse, Denver, Colorado.

**A P P E A R A N C E S**

**FOR THE PLAINTIFF:**
KENNETH MARK HARMON, U.S. Attorney's Office, 1225 17th St.
E., Seventeenth Street Plaza, Suite 799 , Denver, CO 80202

**FOR THE DEFENDANT:**
Pro Se

**EXHIBIT B**

1                       **NOVEMBER 4, 2013**

2               (Requested proceedings.)

3               THE COURT:  Government may call its next witness.

4               MR. HARMON:  Your Honor, at this time we call Judge

5       Karla Hansen.

6               COURTROOM DEPUTY:  Remain standing.

7               Your attention please.  Please raise your right

8       hand.

9                   **THE HONORABLE KARLA HANSEN**

10      having been first duly sworn, testified as follows:

11              COURTROOM DEPUTY:  Please be seated.

12              Please state your name, and spell your first and

13      last names for the record.

14              THE WITNESS:  My name is Karla Hansen.  K-A-R-L-A

15      H-A-N-S-E-N.  And, actually, I have a married name also,

16      but the name I am a Judge under is Karla Hansen.  My

17      married last name is Adkinson, A-D-K-I-N-S-O-N.

18              THE COURT:  You may proceed.

19                      **DIRECT EXAMINATION**

20      **BY MR. HARMON:**

21      Q.   Good morning.

22      A.   Good morning.

23      Q.   Let's start off with your profession.  And what

24      position do you hold?

25      A.   I am a county court judge in El Paso County,

1    Colorado.

2    Q.   How long have you had that position?

3    A.   I was sworn in right before 9/11 of 2001.  So that

4    would make it 12 years.

5    Q.   What types of cases do you hear as a county court

6    judge?

7    A.   I handle criminal cases that result in incarceration

8    up to 2 years in jail.  So a lot of traffic, driving under

9    the influence.  Also misdemeanors, like domestic violence

10   cases, theft cases with lower values.  That kind of thing.

11   I also do civil cases if the amount in controversy is up

12   to $15,000.

13   Q.   How long have you been hearing those types of cases

14   as a county court judge?

15   A.   The whole time, 13 years.

16   Q.   Are you familiar with an individual named Michael

17   Destry Williams?

18   A.   I am.

19   Q.   How did you become familiar with him?

20   A.   A case of his was assigned to my division, and he

21   ended up having a jury trial in my division.

22   Q.   Do you recall the charges?

23   A.   False reporting to authorities, I believe.

24   Q.   And was there a register of action that was

25   maintained on the case?

1    A.    There was.

2    Q.    Okay.  Would looking at that help answer some

3    specific questions about the procedural history of the

4    case?

5    A.    It would.

6    Q.    May I ask the witness be shown Government's Exhibit

7    325.  It is in a sleeve, Judge.  You can take it out and

8    use it that way.

9    A.    I've got it.  Thank you.

10   Q.    So I believe you said it was a false reporting case?

11   A.    I did.

12   Q.    Okay.  What type of charge is that?

13   A.    A Class Three misdemeanor.

14   Q.    Is it a criminal charge?

15   A.    It is.

16   Q.    And what case number was it under?

17   A.    06M1224.

18   Q.    And was that the sole charge?

19   A.    Yes.

20   Q.    Can you tell us when the charges were brought?

21   A.    The offense date was October 27th of 2005.

22   Q.    Okay.  And when were the charges actually brought,

23   and how were they brought?

24   A.    There would have been a summons filed that would have

25   been served sometime around that date.  It looks like --

1   let's see.

2   Q.   Would there be -- are there events described in the

3   register of action?

4   A.   There are.

5   Q.   What are events?

6   A.   The things that happen.   In this case, for instance,

7   there was a date when the summons and complaint was filed,

8   which is February 15th of 2006.   There would be events,

9   like jury trial held, sentencing held, those types of

10  things.

11  Q.   Now, you indicated that the case went to trial?

12  A.   It did.

13  Q.   What type of trial?

14  A.   Jury trial.

15  Q.   When did that trial take place?

16  A.   Let's see.   It looks like he was found guilty on

17  October 19th of 2006.   I think that would have been about

18  the third day of his trial.   Let me look.   It looks like

19  the trial started October 17th of 2006 and concluded

20  October 19th of 2006.

21  Q.   Did you preside over the trial?

22  A.   I did.

23  Q.   Before I go too much further, the false reporting

24  charge, was it related to matters that were the subject of

25  another criminal misdemeanor case that was brought in your

1   court?

2   A.   The other criminal case was brought in a different

3   court, but it was related to a previous criminal case.

4   Q.   When I say "court," I meant El Paso County.

5   A.   Correct.

6   Q.   Was that the Judge Wilson case?

7   A.   It was.

8   Q.   So this false reporting charge, did that arise out of

9   conduct involving the Judge Wilson case?

10  A.   It did.

11  Q.   You said the trial lasted about three days?

12  A.   It did.

13  Q.   What was the result?

14  A.   The jury found Mr. Williams guilty.

15  Q.   Who sentenced Mr. Williams?

16  A.   I did.

17  Q.   Do you recall the sentence?

18  A.   I do.

19  Q.   Using the ROA?

20  A.   I do recall.  It was a 90-day sentence that he was

21  sentenced to on the 18th.

22  Q.   When you say "a 90-day sentence," a 90-day sentence

23  to what?

24  A.   Jail.

25  Q.   Were there other aspects of the sentence, as well?

1    A.    There probably were court costs.  There were.

2    Q.    Are you able to appeal convictions and sentences for

3    this type of a charge?

4    A.    Yes.

5    Q.    Do you know if an appeal was initiated in this case?

6    A.    It was.

7    Q.    What happened to the appeal?

8    A.    It was abandoned and then dismissed.

9    Q.    While the case was being pursued on appeal, what

10   happened with the 90-day jail sentence that was imposed?

11   A.    Mr. Williams posted an appeal bond.  So he served a

12   portion of the jail sentence, but not all of it.

13   Q.    Do you recall how much?

14   A.    Let me look.  It looks like the appeal bond was

15   posted on October 25th.  So he would have served from the

16   19th to the 25th, until he posted that bond.

17   Q.    Did you order him to jail right away, then, after the

18   sentence?

19   A.    I did.

20   Q.    So he was free at the time he posted the bond?

21   A.    As soon as the bond was posted, he got out of jail.

22   Q.    And did there come a time when you had further

23   proceedings in your court after the appeals process ran

24   its course?

25   A.    Yes.

1    Q.   What proceeding did you set after that -- what was

2    the next proceeding you set?

3    A.   I sent a notice to Mr. Williams indicating that the

4    appeal had been dismissed, and that he needed to appear.

5    Let's see, actually sent him a notice on December 5th

6    ordering him to appear for a hearing on November 14th.  He

7    failed to appear for that hearing.

8    Q.   Did he file something between the time that you sent

9    that notice and his failure to appear at the hearing?

10   A.   I don't see that he -- well, there was a notice that

11   was filed December 12th, and a motion to recuse me

12   December 12th, and an affidavit in support of the motion

13   to recuse me on December 12th.  And then there was a

14   limited power of attorney on December 13th.

15   Q.   And the actual hearing you held was what date?

16   A.   December 14th.

17   Q.   And the defendant did not show up?

18   A.   That's correct.

19   Q.   Okay.  Did somebody appear on his behalf?

20   A.   Yes.

21   Q.   According to the records, who appeared and what

22   happened?

23   A.   Michael Doll (phonetic) appeared indicating that the

24   defendant had been admitted into the hospital on December

25   13th.

1    Q.   What was the purpose of the hearing?

2    A.   Simply to address the fact that the appeal no longer

3    was pending, at least according to the information I had.

4    Which would mean that Mr. Williams would recommence his

5    jail sentence at that time.

6    Q.   When the defendant failed to appear at this hearing,

7    but somebody else appeared instead, how did you proceed?

8    A.   I issued a bench warrant for Mr. Williams' arrest.

9    Q.   Did the defendant appear in your court after that?

10   A.   No.

11   Q.   Was the warrant at all executed?

12   A.   It was not executed ever, as far as I know.  It might

13   have been executed since he has been handling this case.

14   I don't know.  I have never seen him in my courtroom since

15   that time.

16   Q.   Have you seen him since that time?

17   A.   I see him today.

18   Q.   Can you identify an article of clothing he is wearing

19   and point him out?

20   A.   The gentleman in the green jumpsuit.

21        MR. HARMON:  Your Honor, may the record reflect

22   Judge Hansen has identified the defendant, Michael Destry

23   Williams.

24        THE COURT:  It will so reflect.

25   Q.   (BY MR. HARMON)  You said you didn't physically see

1   him after that date that he issued -- is it called a

2   failure to appear warrant?

3   A.   It is.

4   Q.   If you didn't see him after that, did you hear from

5   him in any way?

6   A.   I did.

7   Q.   How did you hear from him?

8   A.   There were filings submitted to my court.

9   Q.   Okay.  Were these -- if you had to look at them and

10  characterize them, would these be traditional court

11  pleadings or something else?  How would you describe them?

12  A.   Certainly documents that aren't typical court

13  proceeding documents.

14  Q.   Okay.  Would they include things you would call

15  correspondence -- loosely call correspondence?

16  A.   Yes.

17  Q.   Was this correspondence addressed to you, any of it?

18  A.   I think that it was.

19  Q.   When you got it, what would you do with it?

20  A.   Generally speaking, I would submit it to Mary Perry,

21  the clerk of court at that time.

22       MR. HARMON:  At this time I would ask that we

23  republish Government's Exhibit 310, and ask that the

24  witness be able to look at Government's Exhibit 310.

25       THE COURT:  You may.

1    Q.   (BY MR. HARMON)  Judge Hansen, let's start off this

2    way.  Take a look at the actual exhibit so you can make

3    sure -- it will be a hard copy, then go on the screen.  We

4    will show portions of it on the screen.

5    A.   I don't know if I have the hard copy in this binder.

6    The binder starts with 312.  Okay.  I have 310.

7    Q.   Have you looked at it?

8    A.   Yes.

9    Q.   Is this some of the correspondence you got?

10   A.   Yes.

11   Q.   I want to focus on the first page.  Is that the

12   letter, Judge?

13   A.   Yes.

14   Q.   Is that a letter addressed to you?

15   A.   It is.

16   Q.   I think we have it on the screen.

17        MR. HARMON:  I would ask for permission to

18   republish that page.

19        THE COURT:  You may.

20   Q.   (BY MR. HARMON)  Can you kindly read the body of the

21   letter, from the salutation, where it says "Judge Hansen,"

22   and through the rest of it?

23   A.   Sure.  "This letter is notification and request for

24   settlement of the case/account No. 0006M1224.  The fund

25   that this account is trading under is Fund No. 6, CUSIP

1    No. 316127109 and symbol FDESX for your convenience.

2    Please provide a certified presentment of the value of

3    costs of charges to allow this case/account to be settled

4    in honor.

5        Please e-mail presentment at Destry_231965@

6    yahoo.com.  Destry_231965@yahoo.com, and send additional

7    hard copy original presentment to Michael D. Williams,

8    1735 Courtner Road, Pueblo, Colorado 81006.  Mr. Michael

9    McKlem also has the authority to accept, retrieve any and

10   all documents relating to this person's corporations case

11   account.  He will also be requesting a presentment in

12   person for settlement of this case account at your

13   location in the near future.

14       I look forward to settling this dispute without

15   involving CID of the IRS.  I am positive that we can come

16   to an agreement and all live in honor and peace.  Your

17   attention to this matter is appreciated.  Thank you.

18   Michael-Destry Williams."

19   Q.   Judge, I want to focus on that reference to "CID of

20   the IRS."  What did you understand it to be reference to.

21   A.   It appeared to be reference to an investigative body

22   related to the IRS.  The Criminal Investigation Division

23   is what I would think it stands for.

24   Q.   Did you take this as a veiled threat?

25   A.   Yes.

1    Q.   What did you understand, if at all, anything this was

2    attempting to convey besides this threat about the IRS?

3    A.   I can't -- I can't say that I understood what exactly

4    the point was.

5    Q.   At the point that the letter was received, would that

6    be reflected by the stamp on the upper right part of the

7    letter?

8    A.   Yes.

9    Q.   So as of January 30, 2009, how much of the jail

10   sentence in your case had Mr. Williams satisfied?

11   A.   The original 6 days or so.

12   Q.   Was it permissible in your court at that time for him

13   to write out a check or make some type of payment to avoid

14   serving the rest of his sentence?

15   A.   Not ever.

16   Q.   Judge, I would like you to take a look next at what

17   has been received in evidence as Government's Exhibit 305

18   -- excuse me, I believe it is 306, actually.  Let's start

19   off with looking at the actual correspondence, then we

20   will put the portions on the screen, with the Court's

21   permission.

22   A.   Okay.  I have 306.

23   Q.   Do you recall getting this correspondence?

24   A.   I do.

25   Q.   Included in this correspondence, is there something

1    called an Information Referral Form, an IRS form there?

2    A.   There is.

3         MR. HARMON:  Your Honor, at this time I request

4    permission to republish page 2 of Government's Exhibit

5    306.

6         THE COURT:  You may.

7    Q.   (BY MR. HARMON)  Judge Hansen, the jury now has on

8    the screen the Information Referral Form that is part of

9    306.  It will be to your right.  Are you addressed in this

10   form?

11   A.   I am.

12   Q.   How are you identified?

13   A.   As a taxpayer named Karla J. Hansen, doing business

14   as Judge Hansen.

15   Q.   And is that your business address, the Tejon address?

16   A.   It is.

17   Q.   Are you accused of committing tax violations in this

18   form?

19   A.   It seems like I probably am, yes.

20   Q.   Take a look at box 4.  Is that completed in the form?

21   A.   It is.

22   Q.   What is the heading of that box?

23   A.   Alleged Violation of Income Tax Law.

24   Q.   What is checked off?

25   A.   Failure to pay tax.  Unreported income.  Failure to

1    file return.  Other, describe below.

2    Q.   And is there a portion of this form that describes

3    the other?

4    A.   I take it it is under "Comments."  Use of account

5    524080608 without legal or lawful permission.  Failed to

6    disclose any contractual obligation.  Failed to disclose

7    funds borrowed.  Failed to pay taxation on said funds that

8    is required.  And failed to return funds to the

9    beneficiary as directed.  Also failed to comply to the

10   legal commercial process of forms noticed upon them which

11   are forms 56, 28, 90, 91 and 1099A.

12   Q.   Judge, did you have any dealings with Michael Destry

13   Williams outside of the case, the false reporting case

14   that you have discussed?

15   A.   Not at all.

16   Q.   Do you have any understanding of -- do you know of

17   any factual basis that Mr. Williams would have for

18   accusing you of failing to pay tax?

19   A.   No.

20   Q.   How about not reporting all of your income?

21   A.   No.

22   Q.   How about failing to file returns?

23   A.   No.

24   Q.   Do you even understand what you're being accused of

25   in section 5A of this form?

1    A.    I do not.

2    Q.    Can you tell us, is there a section of the form that

3    talks about how the information was come upon for this

4    referral?

5    A.    Yes.

6    Q.    What portion of the form is that?

7    A.    Sub E below 5.

8    Q.    Is there something identifying -- what is identified

9    there?

10   A.    El Paso County Court Case No. 2006M1224, symbol

11   FDESX, KUSIP No. 316127109 Fund 6.

12   Q.    What portion of this do you understand?

13   A.    The court case number.

14   Q.    Do you know anything about the rest of it?

15   A.    I do not.  It was referenced in that other letter,

16   but that is all I know about it.

17   Q.    Do you recall how you responded when you got this

18   referral?

19   A.    I am certain I would have sent it to Ms. Perry.

20   Q.    Did there come a time that you had contact with

21   federal investigators from the Treasury Department about

22   this?

23   A.    Yes.

24   Q.    And did you provide it to them?

25   A.    I did.

1    Q.   What type of concern, if any, did getting this

2    referral cause you?

3    A.   Well, it looks like a standard Department of Treasury

4    form.  And if you look at it, without knowing any of the

5    parties involved here, you might think there is something

6    to this, because it is just a standard form that acts like

7    he is accusing me of not -- of doing several things that

8    violate IRS law.

9    Q.   Now, did you recall other types of IRS forms from

10   Mr. Williams that concerned your case?

11   A.   I think there were some others, yes.

12   Q.   At this time I would ask that you take a look at

13   Government's Exhibit 307.  Judge, if you look at the last

14   page, you will see an envelope.  Can you take a look at

15   that.

16   A.   Yes.

17   Q.   Who is it addressed to?

18   A.   Me.

19   Q.   And is this correspondence you would have gotten?

20   A.   Yes.

21   Q.   If you can flip through it and tell me if you see any

22   forms 56 that have your name on them.

23   A.   I do see a form 56.

24   Q.   All right.  And does it -- is one of them for you?  I

25   might be showing you the wrong document.

1   A.   I see a form 56 relating to Michael Destry Williams.

2   Q.   Were these form 56s of the sort that you saw that had

3   your name on them, too?

4   A.   Yes.

5   Q.   Do you recall a check coming with one of these?

6   A.   I do.

7   Q.   What did you do when you saw the check?

8   A.   I gave it to Mary Perry.

9   Q.   I would like to go to page 18 of Government's Exhibit

10  307 if we could, please.

11       MR. HARMON:  May I republish that, Your Honor?

12       THE COURT:  You may.

13  Q.   (BY MR. HARMON)  Is one of the documents in the

14  correspondence the arrest warrant you issued in this case?

15  A.   Yes.

16  Q.   Is that on the screen now before the jurors?

17  A.   It is.

18  Q.   This indicates -- tell me if I am reading this

19  correctly.  Does it indicate this was a certified copy,

20  certified in August of 2009?

21  A.   Yes.

22  Q.   Had the defendant yet appeared on this warrant?

23  A.   No.

24  Q.   Do you know why you are getting a certified copy of

25  this arrest warrant?

1    A.    I do not.

2    Q.    Just a couple more documents I would like to show

3    you, Judge.

4    A.    That's fine.

5    Q.    I would like to draw your attention to Government's

6    Exhibit 205.  It is already in evidence.  If we can have

7    you take a look at that binder.

8          MR. HARMON:  I would like to republish, I believe

9    it is page 11.

10          THE COURT:  You may.  I am sorry, 205?

11          MR. HARMON:  Yes, Your Honor.

12          THE COURT:  You may.

13    Q.   (BY MR. HARMON)  Judge Hansen, you can take a look at

14    the actual Exhibit 205, then you will see on the screen a

15    form 56.

16    A.    Okay.

17    Q.    Is this one of the -- do you have it there in hard

18    copy?

19    A.    I do.

20    Q.    Does it name you?

21    A.    It does.

22    Q.    How are you named?

23    A.    Karla J. Hansen, as a fiduciary.  And my bar number.

24    Q.    The fiduciary for whom?

25    A.    The form would make it look like I am a fiduciary for

1     Michael Destry Williams.

2     Q.   Did you give Mr. Williams authority to claim you as a

3     fiduciary for the IRS?

4     A.   I did not.

5     Q.   Do you know how it came to be that he could have

6     named you as a fiduciary?

7     A.   I have no idea.

8     Q.   Can you read what the purported authority you have

9     been given in connection with Mr. Michael Williams on this

10    form would be?

11    A.   It says, "Valid trust instrument and amendments and

12    other, all commercial transactions are directed to Case

13    No. 2006M1224 and/or to balance, pay, compensate, close,

14    settle any and all disputes, warrants, and liabilities."

15    Q.   Was it permissible for Mr. Williams to resolve the

16    case that he had with you by appointing you as a fiduciary

17    and somehow dealing with the IRS?

18    A.   It was not.

19    Q.   I would like to turn to Government's Exhibit 203 now.

20    And I would like to --

21         MR. HARMON:   I would like to republish page 2 of

22    the exhibit.

23         THE COURT:   You may.

24    Q.   (BY MR. HARMON)   Judge, there is on the screen a

25    failure to appear warrant.   Is that the warrant that you

1    issued?

2    A.   Yes.

3    Q.   Do you know anything about the stamp that is written

4    across it?

5    A.   I do not.

6    Q.   I would like to now turn you to Government's Exhibit

7    213.

8         MR. HARMON:   I would request permission to

9    republish page 3 of Exhibit 213.

10        THE COURT:   You may.  Page 4?

11        THE WITNESS:   Page 4?

12   Q.   (BY MR. HARMON)  I believe it is the fourth page,

13   Judge.

14   A.   Yes.

15   Q.   Another copy of your warrant?

16   A.   Yes.

17   Q.   Is this another type of stamp across it?

18   A.   It is.

19   Q.   Do you recognize the stamp?

20   A.   I do not.

21   Q.   Is there some handwriting toward the lower part of

22   the warrant?  Do you see some handwriting there?

23   A.   The part that says "Money Order.  Pay to United

24   States Treasury."

25   Q.   Was that part of the warrant when you issued it?

1    A.   It was not.

2    Q.   Can you decipher -- so you deciphered part of it.

3    Tell us the rest of what you can read on that.

4    A.   Well, it looks like it is dated 2/24/2010.  There is

5    an amount due, and a blank.  There is -- then on the left

6    there is an amount.  I don't know what that is, either.

7    Maybe it is "amount" or "for amount."  I am not sure.

8    Looks like "amount," where part of the A got cut off.  I

9    don't know.

10   Q.   Then is there somebody who is --

11   A.   By Michael Destry Williams, authorized agent.  EIN

12   52408068.

13   Q.   Do you know what an EIN is?

14   A.   I am not certain I know.

15   Q.   Have you heard of employer identification numbers?

16   A.   I have.

17   Q.   I would like to turn to 215 now.

18        MR. HARMON:  I would like to republish page 10.

19        THE COURT:  You may.

20   Q.   (BY MR. HARMON)  I will focus, Judge, on the top

21   form.  There are three forms depicted on this page.  Do

22   you know what the IRS Form 1099-OID is?

23   A.   I do.

24   Q.   Do you see yourself listed there had as a payor?

25   A.   I do.

1   Q.   And how is Michael Destry Williams listed, if he is

2   on the form?

3   A.   Recipient.

4   Q.   Do you know why you are listed there as a payor?

5   A.   I do not.

6   Q.   There is a description in box 5.  Can you read it to

7   us?

8   A.   "False swearing by police."

9   Q.   How does that relate to the charges in the case you

10   presided over?

11   A.   It relates that -- Mr. Williams' contention was that

12   the police had lied in their police report about what

13   occurred at the scene.  So the case was about an internal

14   affairs investigation initiated by Mr. Williams, where he

15   had one version of what he says the police did, and their

16   statements were different than that.

17   Q.   Okay.  Judge, there is a series of the referrals

18   later on in this exhibit.  I am going to try to -- I would

19   like to draw your attention to page 38.  I believe it is a

20   particular referral.

21   A.   I am sorry, information referral?

22   Q.   Information referral, yes.  Page 38.  Maybe it is

23   helpful to look on the screen.

24   A.   I see it on the screen.  I just haven't found the

25   hard copy that goes along with it.  I see it.

1    Q.   How does this referral appear -- this form appear in

2    format to the one that you recall receiving in the mail?

3    A.   Well, it reflects different alleged violations of

4    income tax law.  Some of them are the same, but he also

5    alleged organized crime, false altered documents.  And

6    under "other" --

7    Q.   Is this the same form?

8    A.   I think it is the same form, yes.

9    Q.   Slightly different alleged violations, then?

10   A.   Yes.

11   Q.   Can you read the comment section to us?

12   A.   "Failed to disclose any contractual obligation.

13   Failed to disclose funds borrowed.  Failed to pay taxation

14   on said funds.  Failed to return principle to the lender

15   as directed.

16   Q.   Do you have an understanding of the factual basis for

17   these allegations?

18   A.   I have no idea what he is talking about.

19   Q.   Do you see a part of the form -- who is the taxpayer

20   that is referenced?

21   A.   I am.  Karla J. Hansen.

22   Q.   Is there a part of the form where the person who

23   submits the form can characterize -- whether they can

24   state whether the taxpayer is dangerous or not?

25   A.   There.

1    Q.   What is checked?

2    A.   "Yes."

3    Q.   Do you have any reason to know why you are checked as

4    a being a dangerous taxpayer?

5    A.   Absolutely not.

6    Q.   Judge, did you ever see this form before?

7    A.   I don't think that I did.

8    Q.   So if it went to the IRS, you wouldn't know what

9    happened to it after it got there?

10   A.   That's correct.

11        MR. HARMON:  May I have a moment, Your Honor?

12        THE COURT:  You may.

13        MR. HARMON:  Thank you.  Your Honor, at this time I

14   have no further questions of the witness.

15        THE COURT:  Mr. Williams, any cross-examination?

16        (No response.)

17        THE COURT:  All right.  Thank you very much, Judge,

18   you are excused.  May she be excused?

19        MR. HARMON:  Yes, Your Honor.

20        THE COURT:  All right.  You are excused.

21        THE WITNESS:  Thank you.

22        (Further proceedings had but not transcribed per

23   request of ordering counsel.)

24

25

1

2              **R E P O R T E R ' S      C E R T I F I C A T E**

3

4          I, Darlene M. Martinez, Official Certified

5    Shorthand Reporter for the United States District Court,

6    District of Colorado, do hereby certify that the foregoing

7    is a true and accurate transcript of the proceedings had

8    as taken stenographically by me at the time and place

9    aforementioned.

10

11

12

13          Dated this <u>19th</u> day of <u>February</u>, 2014.

14

15

16

17          _____

18          s/Darlene M. Martinez

19          RMR, CRR

20

21

22

23

24

25